**Dated: January 22, 2025**

**The following is ORDERED:**



*Paul R. Thomas*
PAUL R. THOMAS
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMANDA KAY CHRONISTER | Case No. 23-80792-PRT |
| Debtor. | Chapter 7 |

| | |
|---|---|
| LUKE HOMEN | |
| Plaintiff | |
| v. | Adversary Case No. 24-8004-PRT |
| DANNY SCOTT THOMAS | |
| Defendant. | |

## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

Before the Court are cross-motions for summary judgment. Defendant Danny Scott Thomas filed his Motion for Summary Judgment with Supporting Brief.[1] In response, Plaintiff Luke Homen, Chapter 7 Trustee, filed a Partial Motion for Summary Judgment and Response to Defendant's Motion for Summary Judgment.[2] Defendant Thomas filed a Response in opposition

---

[1] ECF No. 27.

[2] ECF No. 34.

to Trustee's Partial Motion for Summary Judgment.[3] After review of the motions, briefs and supporting documentation, the Court finds that there are material facts in dispute and neither party has established entitlement to judgment as a matter of law.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A) and (E).

## Summary Judgment Standard

The United States Court of Appeals of the Tenth Circuit has held that

> Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.* Put differently, "[t]he question . . . is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Shero v. City of Grove,* 510 F.3d 1196, 1200 (10th Cir. 2007) (quotation omitted). "On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quotation omitted).[4]

The Court will apply this standard to the Motion.

## Analysis

Defendant Thomas ("Thomas") seeks summary judgment on the Trustee's claim that the Debtor Amanda Kay Chronister ("Debtor") fraudulently transferred real property located in

---

[3] ECF No. 36.

[4] *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).

McIntosh County ("Belle Drive Property") to Thomas in violation of 11 U.S.C. § 548. During the relevant time periods, Thomas was the Debtor's stepfather, married to the Debtor's mother, Deborah Leann Thomas ("Deborah Thomas"). According to Thomas' affidavit and deposition, he purchased the Belle Drive property with Deborah Thomas in 2001, has lived there for approximately 20 years, mortgaged the property with Deborah Thomas, paid off the mortgage, and pays the taxes, utilities and maintenance expenses. Both parties presented as evidence the original warranty deed to Deborah Leann Thomas, a married person, for the Belle Drive Property. Thomas' name is not on that warranty deed. Both parties also presented several quit claim deeds transferring the Belle Drive property. The first quit claim deed was recorded on December 1, 2017 from Deborah L. Thomas to Amanda Kay Brooks and Laurie Renshaw. Amanda Kay Brooks was the Debtor's name before her marriage to Jesse Chronister in 2021. Laurie Renshaw was a neighbor and friend of Deborah Thomas. The second quit claim deed was recorded on February 25, 2019, between "Laura L. Renshaw and Amanda Brooks, both single persons" to Amanda Brooks, with the notation "Re-recorded to correct omission of marital status."[5] The third quit claim deed was recorded March 6, 2019, from "Deborah L. Thomas and Danny S. Thomas, a married couple, and Amanda Kay Brooks, single," to Amanda Kay Brooks, with the notation "Recorded to correct omission of marital status on original deed recorded 12/1/17 at Book 1017, Pg. 109. No Consideration Given Family Transaction." Shortly after this transfer, the Debtor and her husband mortgaged the Belle Drive property and other real estate to Armstrong Bank.

Deborah Thomas passed away on September 17, 2020.

---

[5] The Debtor's deposition testimony indicates that Deborah Thomas's intent regarding this transfer was to keep the Belle Drive property in the family in case she needed to move to a nursing home. *See* ECF No. 34-1, Ex. A. pp. 19-20.

In January of 2022, the Debtor obtained a Small Business Administration loan for $333,000.00 which she used to pay off the mortgages to Armstrong Bank on the Belle Drive property and other real estate. Approximately six months later, on July 26, 2022, a fourth quit claim deed was recorded between "Amanda Kay Chronister (Brooks) and Jesse Chronister, a husband & wife" to Danny Scott Thomas. This is the transfer that the Trustee seeks to avoid, as it occurred less than two years before the Debtor filed bankruptcy on October 31, 2023.

The Debtor and Thomas testified in separate depositions that the third quit claim transfer from Thomas, Deborah L. Thomas and Amanda Brooks to Amanda Brooks (the Debtor) was made so that the Debtor could mortgage the Belle Drive property and use the proceeds to purchase and operate a restaurant. They also testified that there was never any intent for the Debtor to obtain anything from this transfer but bare legal title to the property, never equitable title or beneficial ownership. They only intended for her to use the property as collateral for a loan so that she could buy a business. Thomas argues that this transfer created a "resulting trust" for his benefit because there was never any intent that the Debtor would gain any beneficial interest in the property. There was no intent that the Debtor would possess the property, nor did the Debtor pay property taxes, or utilities and maintenance costs. Although the Debtor used the property as her mailing address and listed it as her residence in her bankruptcy petition, she did not live there in 2019 nor did she take possession of the property after the second, third or fourth quit claim deed. Thomas claims that since he was the beneficiary of a resulting trust, the Debtor did not hold an equitable interest that became property of the bankruptcy estate when she filed her bankruptcy. Thomas acknowledges that the Debtor's legal title was property of the bankruptcy estate pursuant to § 541(d), but asserts that it was of no value, thus there was no harm or prejudice to her creditors when she transferred that title back to Thomas in 2022. Thomas also

argues that even if there was value to the Debtor's legal interest in the property, the Trustee cannot establish the elements of his case under § 548 as Thomas is not an "insider," which is one of the badges of fraud that he must prove to prevail on his claim of fraudulent transfer under § 548.

The Trustee opposes summary judgment in favor of Thomas and moves for judgment in his favor on the resulting trust issue.

Thomas cites *In re Arzate*, 618 B.R. 535, 541–42 (Bankr. W.D. Okla. 2020) in support of his argument that the third quit claim deed established a resulting trust in his favor. That case looks to Oklahoma law to define a "resulting trust":

> Resulting trusts arise where the legal estate in property is disposed of or acquired, not fraudulently or in violation of any fiduciary duty, but the intent appears or is inferred from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title. In such a case, a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner. *Cacy v. Cacy,* 1980 OK 138, 619 P.2d 200, 202; *Wadsworth v. Courtney*, 393 P.2d 530 (Okla. 1964); *Barry v. Frizzell*, 371 P.2d 460 (Okla. 1962); *In re Commercial Financial Services, Inc.*, 268 B.R. 579, 606 (Bankr. N.D. Okla. 2001); *Naylor Farms, Inc. v. Anadarko OGC Company,* 2011 WL 7267853 *1 (W.D. Okla. 2011) ("A resulting trust...may be judicially imposed on one holding legal title to property if it was obtained under facts and circumstances disclosing an intention that the beneficial interest was not to be enjoyed by the legal title holder." (citing *Wootton v. Melton*, 631 P.2d 1337, 1341 (Okla. Civ. App.1981)).
>
> It is fundamental that a resulting trust requires an *intent* to retain a beneficial interest.[6]

To judicially impose a resulting trust on the Debtor regarding the third quit claim transfer in 2019, the facts and circumstances must disclose not only an intent to retain a beneficial interest

---

[6] *In re Arzate*, 618 B.R. 535, 541–42 (Bankr. W.D. Okla. 2020) (emphasis in original).

by Deborah and Danny Thomas, but Thomas must also show that they had no intent that the Debtor would enjoy a beneficial interest.[7]

The facts of *Arzate* which established the existence of a resulting trust are different from those in this case. In *Arzate,* the Debtor was transferred property so that he could assist the grantor. The parties' intent was that the Debtor would use the property conveyed to obtain a benefit for the grantor, not the Debtor. That is not what happened here. Thomas admits in his deposition that the purpose of the 2019 transfer which he argues created a resulting trust in his favor was to assist or benefit the Debtor in purchasing a restaurant. Shortly after the transfer, the Debtor and her husband mortgaged the property to Armstrong Bank, so she clearly obtained a benefit from the transfer.

The evidence regarding the parties' intent appears to suggest that the transfer was more in the nature of a gift to the Debtor from her mother and stepfather so that she could buy a business. Did that operate to diminish or extinguish Thomas' interest? He does not address how the Debtor's subsequent treatment of the property impacted his claim to be the real owner of the property pursuant to a resulting trust. By transferring property knowing that it would be mortgaged, subject to loss if foreclosed, it is unclear to the Court how Thomas could claim to be a beneficial owner of the Belle Drive property. Moreover, to rebut a presumption of a gift to the Debtor, Thomas must present strong, clear, and convincing evidence of an intent *not* to transfer a beneficial interest to the Debtor if he is to prevail on his claim of a resulting trust.[8]

---

[7] *Id.* at 542 (citations omitted).

[8] *Id.*

The Court notes that neither party has discussed the actual ownership interest of Thomas in the property at the time he, Deborah Thomas, and the Debtor transferred the property by quit claim to the Debtor in 2019. The Court finds nothing in the record to indicate that Thomas ever owned more than an inchoate marital interest in the property.[9] There is a deed in 2001 to Deborah Leann Thomas, a married woman. Donald Thomas is not on this deed. Thomas apparently joined Brooks in mortgaging the property, which mortgage was released in 2017 according to his exhibits.[10] But there is nothing in the record that establishes what interest he held in the property when it was conveyed to the Debtor in 2019. Thus, it is unclear whether he could retain a beneficial interest along with his wife.

Thomas challenges other allegations raised by the Trustee. He claims he is not an insider because his wife died before the transfer made by the Debtor back to him. He offers no authority for this assertion. He also challenges the insolvency of the Debtor. These present factual and legal disputes which the parties have failed to establish, and the Court cannot resolve at this stage.

The facts do not appear to support Thomas' claim of a resulting trust. However, because the focus for the Court is the parties' intent, not all questions were addressed in the depositions, and because there are other issues of fact that must be tried by the Court, the Court finds that genuine issues of fact exist and neither party has established entitlement to judgment as a matter of law. The Court also notes that the Trustee filed an Amended Complaint after these motions were filed and has added causes of action which could involve and impact the issues raised in the

---

[9] *See* OKLA. STAT. tit. 58, § 311.

[10] ECF No. 27, Exhibit D. Exhibit B which purports to be a mortgage by Thomas and Mrs. Thomas to Armstrong Bank was not attached to Thomas' motion.

summary judgment motions. The Court believes it is more practical and fairer to consider all claims arising from the same transactions at the same time.

IT IS THEREFORE ORDERED that the Motion for Summary Judgment with Supporting Brief filed by Defendant Danny Scott Thomas (ECF No. 27) and the Partial Motion for Summary Judgment filed by the Trustee (ECF No. 34) are hereby **denied.**

###